Fabricant, J.
Plaintiff Rosa Ladd filed this action against her former employer, the Everett Savings Bank (“the Bank”) and its president, James Whittaker, asserting various claims arising from alleged sexual harassment. Ladd’s husband, Robert Ladd, claims loss of consortium. Presently before the Court is the motion of the defendants to dismiss Counts I and II of the complaint as against James Whittaker, to dismiss part of Count II as against the Bank, and to dismiss Counts III, IV, & V in their entirety. For the reasons set forth below, defendants’ motion will be allowed in part and denied in part.
BACKGROUND
The complaint contains the following allegations. Ladd was employed by the Everett Savings Bank for 19 years. In 1991, she was promoted to the position of Director of Human Resources. In March of 1995, the Bank hired James Whittaker as its president. Whittaker’s conduct towards women, including Ladd, was “overbearing, and condescending and many of the comments which he made were inappropriate for the workplace.” The complaint describes in detail particular incidents involving verbal and physical sexual overtures by Whittaker toward Ladd and other women. Whittaker also “condoned similar conduct by other males in executive positions.” Specific incidents involving men under Whittaker’s authority are described.
Female employees complained to Ladd, as Director of Human Resources. Some of these employees left the Bank. Ladd attempted to “mediate the situation," but Whittaker “accused her of undermining his authority and showing disloyalty to the bank.” Whittaker removed part of Ladd’s job responsibilities, “ordering that employees were no longer authorized to take their complaints” to her. Whittaker’s conduct “created a charged and biased atmosphere ... a sexually threatening atmosphere in which females had to work, resulting in the termination or resignation of nine female employees,” and “interfering with the plaintiffl’s] . . . attempts to properly perform her job.”
Eventually, Whittaker suspended and then, on January 31, 1997, terminated Ladd from her position, in retaliation for her “refusal to condone” Whittaker’s and others’ sexually offensive conduct. As a result, Ladd alleges, she has lost income and “fall[en] into a deep depression resulting in disability and requiring regular psychiatric care.”
Ladd complained to both the Massachusetts Commission against Discrimination (MCAD) and the Equal Employment Opportunity Commission (EEOC) on or about March 24, 1997. She withdrew her administrative complaints on or about July 3, 1997, and brought this action on July 17, 1997.
Ladd’s complaint contains some nine pages of detailed factual allegations, and then sets forth five counts, each incorporating all prior allegations. Count I, entitled “Discrimination in Employment,” alleges that both defendants “subjected plaintiff to a severe, continuing pattern and practice of sexual harassment because of her gender, female” in violation of G.L.c. 151B. Count II, entitled “Sexual Harassment,” alleges that both defendants subjected her to sexual harassment in violation of both G.L.c. 151B, §4(16) and G.L.c. 214, §1.
Count III, entitled “Illegal Termination,” alleges, against the Bank alone, that “her suspension and termination were retaliatory acts which result from her attempts to correct the charged and threatening atmosphere in which she worked,” and that “it was her attempts to prevent the illegal acts of the defendants which led to her suspension and discharge.” Therefore, Count III asserts, her discharge “was an illegal termination as it was an act not favored by public policy, ” and “was also a breach of the implied condition of ‘good faith’ present in her employment contract.”
Count IV, entitled ‘Tortious Interference with a Contractual Relationship,” alleges that Ladd had a “contract of employment” with the Bank for nineteen years, and that Whittaker “procured her discharge by inducing the bank to breach its implied condition of good faith present in the employment contract.” Count V, finally, asserts that Ladd’s husband, Robert Ladd, suffered loss of consortium as a result of the defendants’ conduct.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must take the allegations of the complaint, along with inferences therefrom, as true. Fairney v. Savogran Co., 422 Mass. 469, 470 (1996); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). All inferences should be drawn in the plaintiffs favor “so as to do substantial justice.” Ourfalian v. Aro Mfg. Co., Inc. 31 Mass.App.Ct. 294, 296 (1991). “[The] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which *18 would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Charbonnier v. Amico, 367 Mass. 146, 152 (1975); Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979). “[A] complaint is not subject to dismissal if it would support relief on any theory of law.” Whitinsville, 378 Mass. at 89; see also C.M. v. P.R., 420 Mass. 220, 231 (1995).
1.Counts I and II.
Whittaker seeks dismissal of the claims against him under Count I, and under Count II insofar as it is based on c. 151B, on the ground that he is not subject to suit under c. 151B, §§4(1) and (16A), because he is not an employer. He relies on decisions of the Superior Court and of the MCAD holding that those sections do not impose individual liability on employees, and on federal cases construing equivalent provisions of Title VII in similar fashion.
This Court agrees that the cited provisions of c. 151B authorize suit only against the employer, not against individual employees. That proposition, however, does not compel dismissal of these counts against Whittaker. Section 4(5) ofc. 151Bmakes it unlawful for “any person, whether an employer or an employee ... to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so.” Thus, Whittaker can be sued individually for aiding and abetting the Bank’s discrimination and harassment. Although the complaint does not explicitly invoke this subsection, read in the generous manner required at this stage, it contains sufficient factual allegations to support relief on a theory of aiding and abetting.[3] The motion to dismiss must be denied as to Count I and as to Count II insofar as it is based on c. 15 IB.
Both Whittaker and the Bank seek dismissal of Count II insofar as it is based on G.L.c. 214, §1, on the ground that c. 151B provides the exclusive remedy for the conduct it prohibits where that statute applies. Guzman v. Lowinger, 422 Mass. 570, 572 (1996). Ladd properly conceded as much at oral argument on the present motion. Accordingly, Count II must be dismissed as against both defendants insofar as it is based on G.L.c. 214, §1.
2.Counts III and IV.
The Bank argues that Count III fails to state a claim on which relief may be granted, in that the allegations of the complaint do not show that Ladd had a contract for employment other than at-will. It argues also that Ladd is barred from claiming termination in violation of the public policy against retaliation for opposing discrimination, because c. 151B provides the exclusive remedy for such a claim. Here again, the bank’s legal theory is correct, but does not warrant dismissal. As the Bank correctly perceives, the essence of the claim set forth in Count III, although not labeled as such, is retaliation in violation ofc. 15 IB, §4(4). Indeed the complaint alleges retaliation explicitly both in its recitation of the facts and in paragraphs 37 and 38 of Count III. Labels aside, Count III states a claim against the Bank for retaliation in violation ofc. 151B,§4(4), and the motion to dismiss must be denied as to this Count.
As to Count IV, Whittaker makes essentially the same argument the Bank did with respect to Count III: Ladd had no contract with which he could interfere,[4] and common law claims are barred by c. 15 IB. The argument fails for the same reasons. Individual employees are subject to suit for retaliation under c. 151B, §4(4), which applies to “any person.” Count IV, despite its label, alleges in substance that Whittaker brought about Ladd’s discharge in retaliation for her opposition to his unlawful conduct.[5]This states a claim against Whittaker for retaliation in violation of c. 151B, §4(4), and the motion to dismiss must be denied as to Count IV.
3.Count V.
Count V, by Robert Ladd for loss of consortium, derives from his wife’s substantive counts, and is viable only to the extent that they are, and that they support such a claim. As indicated supra, each of Rosa Ladd’s claims is viable under applicable provisions of c. 151B, although not under the common law theories evoked by the labels appearing in her complaint. Chapter 15IB authorizes damages for emotional distress suffered by an employee as a result of conduct in violation of its prohibitions, even where common law claims for such harm would be barred by the workers compensation law, c. 152, §24. Thus, the cases defendants cite holding loss of consortium claims barred where the underlying claim of the spouse is barred are inapposite. E.g. Green v. Wyman-Gordon Co., 422 Mass. 551, 558-59 (1996). Defendants cite no authority barring a loss of consortium claim based on a spouse’s viable claim for emotional distress suffered as a result of a violation of c. 151B, nor is it apparent that such a claim would not serve the policies underlying that statute. Accordingly, the motion to dismiss must be denied as to Count V.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants’ motion to dismiss is ALLOWED with respect to Count II insofar as that Count asserts a claim under G.L.c. 214, §1, and DENIED with respect to Count I, Count II insofar as it asserts a claim under G.L.c. 151B, and Counts III, IV, andV of the complaint.

Defendants’ memorandum asserts, without explanation or citation, that Ladd “is barred” from claiming aider and abettor liability against Whittaker “on the face of the facts alleged.” It is entirely unclear why the harassing and discriminatory conduct of an individual in the employer’s highest level management role would not constitute aiding and abetting the employer in engaging in that conduct. Even if, however, a claim of aiding and abetting could not rest on a manager’s own behavior, the complaint alleges aiding and abetting in its allegations that Whittaker used his position to encourage similar conduct by others.

That Ladd’s employment was terminable at will does not make her relationship with the Bank other than contractual. A contract terminable at will may still be subject to interference by a third party. As will be seen, however, the point is immaterial, since Count IV states a claim under c. 15 IB.

It is worth noting that this is not a case in which a plaintiff attempts to avoid the consequences of a failure to comply with the procedural requirements of c. 151B by couching claims that fall substantively under that statute in terms of common law theories. Cf. Mouradian v. General Electric Co., 23 Mass.App.Ct. 538 (1987). Here, to the extent that the present record shows, the plaintiff has met all procedural requirements, so that all remedies under c. 151B are fully available to her. Under these circumstances, the well-known standards applicable to a motion to dismiss dictate that inartful drafting not result in the loss of otherwise viable claims. Nevertheless, the filing of an amended complaint, explicitly identifying in each count the applicable provision of c. 15 IB, and eliminating references to common law theories, would tend to advance the orderly processing of the litigation.