JOSEPH A. SINGARELLA & another *vs.* CITY OF BOSTON.

Suffolk.   February 9, 1961. — April 4, 1961.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Contract,* Validity, With municipality.  *Boston.  Municipal Corporations,*
Contracts.  *Practice, Civil,* Opening to jury, Ordering verdict.

In passing on the propriety of ordering a verdict for the defendant upon
the plaintiff's opening to the jury at the trial of an action, the state-
ments made in the opening must be taken to be true.   [386]

Respecting a contract of the city of Boston for construction of public
works, the provision of St. 1890, c. 418, § 6, as amended by St. 1950,
c. 216, § 1, that no contract of the city involving more than a certain
amount "shall be deemed to have been made or executed until the ap-
proval of the mayor . . . has been affixed thereto in writing," was satis-
fied where the mayor, with full understanding of the construction con-
tract, endorsed his approval thereof on a letter with which the written
contract had been sent to him and the letter was then stapled to the
contract and kept stapled thereto at all times thereafter, although such
action by the mayor preceded execution of the contract by the city
officers in charge of the project.   [387–388]

CONTRACT.   Writ in the Superior Court dated March 10,
1959.

The action was tried before *Bolster, J.*

*Charles C. Worth,* (*Robert A. Shea* with him,) for the
plaintiff.

*Francis B. Kenney,* Assistant Corporation Counsel, for
the defendant.

KIRK, J.   This is an action for breach of a contract for
the construction of a sewerage system for the Long Island
Hospital in the city of Boston.   An exception to the action
of the judge who, on motion, ordered a verdict for the de-
fendant after the opening statement by the plaintiffs' coun-
sel, brings the case to us.

The substance of the case for the plaintiffs, a partner-
ship, as outlined in the opening statement, follows:  The
plaintiffs submitted the lowest bid in response to an adver-
tisement for bids for the construction of a sewage disposal

system on Long Island, Boston, on July 22, 1958. The board of trustees of the hospital department of the city of Boston voted to award the contract to the plaintiffs. Contracts of the city of Boston ''over a certain amount of money'' must be in writing, and the mayor must ''affix his signature of approval'' thereto. The hospital department sent the contract forms to the mayor with a letter stating that the plaintiffs were the lowest bidders. The mayor had full and complete understanding of the contract. He signed on the bottom of the letter ''approved J. B. Hynes Mayor of Boston, Mass. 8/20/58.'' This letter was at that time and at all times thereafter stapled to the contract form. An insurance man got the papers from the hospital department in the number required by law and took them to the plaintiffs' headquarters where ''Mr. Singarella again signed them'' so that they could get the necessary bonds and insurance. Subsequent to the mayor's approval the trustees of the hospital department signed and executed the contract. The city auditor also signed the contract to indicate that funds were available to do the work, as required by law. The plaintiffs, believing that they had the contract, began to do the work. Thereafter the defendant advised the plaintiffs that it was not going through with the contract and would not let the plaintiffs go on with the work. The plaintiffs were ready, willing, and able to perform their obligation under the contract, and because of the defendant's breach have suffered damage.

For the purpose of determining the correctness of the judge's ruling, all the statements in the opening must be taken as true. *Murphy* v. *Boston & Maine R.R.* 216 Mass. 178, 179. *Flannery* v. *State Mut. Life Assur. Co.* 339 Mass. 699, 700. See especially the statement of Ronan, J., in *Douglas* v. *Whittaker,* 324 Mass. 398, 399–400, where, in part, it was said: ''The motion [for a directed verdict] should be denied if the statements of counsel, treated as facts, together with all rational inferences of which those facts are susceptible, can, upon any reasonable view of those facts and inferences, be deemed sufficient to support the plaintiff's cause of action.''

The opening outlined above would support an ordinary action of contract in all its essentials in that (1) an agreement was made between the plaintiffs and the defendant supported by valid consideration (see *Daddario* v. *Pittsfield,* 301 Mass. 552, 555); (2) the plaintiffs have been ready, willing, and able to perform; (3) the defendant's breach has prevented them from performing (see *Hapgood* v. *Shaw,* 105 Mass. 276, 279; *Bruni* v. *Andre,* 339 Mass. 708, 711); and (4) the plaintiffs have suffered damage (see *Hagan* v. *Riley,* 13 Gray, 515, 516; *King Features Syndicate, Inc.* v. *Cape Cod Bdcst. Co. Inc.* 317 Mass. 652, 655; *Driscoll* v. *Bunar,* 328 Mass. 398, 403). But whether the statements support this particular cause of action depends upon whether they disclose compliance with the statutory regulations governing the manner in which the city of Boston may legally make contracts. *Adalian Bros. Inc.* v. *Boston,* 323 Mass. 629, 632. *Wheaton Bldg. & Lumber Co.* v. *Boston,* 204 Mass. 218, 222.

The pertinent statutory regulations are in St. 1890, c. 418, § 6, as amended by St. 1950, c. 216, § 1,[1] which provides, "All contracts made by any department of the city of Boston . . . shall, when the amount involved is one thousand dollars or more . . ., be in writing, and *no such contract shall be deemed to have been made or executed until the approval of the mayor of said city has been affixed thereto in writing* and the auditor of said city has certified thereon that an appropriation is available therefor . . ." (emphasis added).

We are faced with the question whether the mayor's approval of the contract prior to its execution was sufficient to bind the defendant. We think it was. The fact that his signature of approval appears merely on the letter informing him of the trustees' desire to award the contract to the plaintiffs, and not on the contract itself, cannot be said to be a failure to comply with the statute. At all times

[1] The record does not disclose the acceptance by the city council of the more recent amendments of St. 1890, c. 418, § 6, by St. 1952, c. 376, § 1, and St. 1955, c. 60, § 1, which specifically require such acceptance. The result we reach would not be affected if either amendment had been accepted.

it has been "affixed" to the contract by being stapled thereto. The statute requires no more.

It is settled that the mere acceptance of the lowest bid by the city does not constitute a contract. *Al's Lunch, Inc.* v. *Revere,* 324 Mass. 472, 474–475. Therefore, at the time the mayor signed his approval he did not approve the executed contract. But the statute does not require approval of an executed contract; it merely states that no contract shall be deemed to have been executed until it is approved. So long as the mayor had a full understanding of all the terms of the contract, his approval denotes the exercise of his sound judgment and practical wisdom, and his direct, affirmative sanction of the contract. That is all that his duty to approve contracts requires of him. *McLean* v. *Mayor of Holyoke,* 216 Mass. 62, 64–65. See *Leroy* v. *Worcester St. Ry.* 287 Mass. 1, 7; *Louis M. Herman Co. Inc.* v. *Gallagher Elec. Co. Inc.* 334 Mass. 652, 656. The statute in its terms does not prescribe a chronological sequence for the execution of the contract and approval by the mayor. Once he has approved a contract prior to its execution it would be an "idle ceremony," "sacrificing substance to form," to require him to approve it again after the execution. See *Clarke* v. *Fall River,* 219 Mass. 580, 583. The substance of the matter is that the mayor has approved a contract and the trustees and the plaintiffs have executed it. The mayor's approval could remain ambulatory until execution of the contract by the trustees of the hospital department. See *Bouchard* v. *Haverhill, ante,* 1, 4. So long as the mayor has approved the specific contract relied upon, substantial compliance with the statute is sufficient. See *Goodyear Park Co.* v. *Holyoke,* 291 Mass. 11, 15.

The construction of St. 1890, c. 418, § 6, as amended by St. 1950, c. 216, § 1, urged upon us by the defendant, that the contract must be executed prior to the approval by the mayor is a harsh construction (see *Fred C. McClean Heating Supplies, Inc.* v. *School Bldg. Commn. of Springfield,* 341 Mass. 322, 324) and it is an unnecessary construction to accomplish the legislative purpose of preventing

waste by departments in the government. *Edge Moor Bridge Works* v. *County of Bristol,* 170 Mass. 528, 533–534.

We cannot say that it is apparent from the opening statement that the plaintiffs cannot supply the evidence necessary to establish their case. *Douglas* v. *Whittaker,* 324 Mass. 398, 400, and cases cited in footnote. The plaintiffs were entitled to proceed to a trial of the issues.

*Exceptions sustained.*